**Ann TOORIGIAN, Plaintiff,**

v.

**CONTINENTAL CASUALTY COMPANY, Defendant.**

No. 81–1474C(5).

United States District Court, E.D. Missouri, E.D.

Sept. 27, 1982.

John C. Healy, St. Louis, Mo., for plaintiff.

Edward S. Meyer, Evans & Dixon, St. Louis, Mo., for defendant.

## MEMORANDUM

CAHILL, District Judge.

This matter is before the Court on the defendant's motion for summary judgment.

Ann Toorigian commenced this breach of contract action in the Circuit Court of the City of St. Louis. Continental Casualty Company (Continental) subsequently removed the action to this court. Toorigian claims that Continental breached its obligation under an insurance contract by failing to pay according to the terms of an insurance policy.

Toorigian was a court reporter in the Circuit Court of St. Louis County. In March, 1972, Continental issued her group policy number 45–A–5216 which insures members of the National Shorthand Reporters Association (Association). Basically, the insurance policy is designed to indemnify members of the Association in the event an accident or illness impedes their ability to practice their occupation.

Part I of the policy provides for monthly accident indemnity. Part II provides for monthly indemnity for losses incurred due to illness. The focal provision of this lawsuit is part III. Part III provides:

LOSS OF OCCUPATIONAL USE OF HAND INDEMNITY—PRIOR TO AGE 65.

When injury or sickness shall result in *pathological changes* to either or both of the Insured's hands, and when as the result of such injury or sickness, indemnity has been paid under Part I or Part II of the policy for a period of twelve consecutive months, the Company will upon the receipt of due written proof that such loss of occupational use of either or both hands is permanent, pay in one sum the Loss of Use of Hand Indemnity stated in

the Schedule in addition to any other indemnity provided in the policy.

Indemnity will not be paid under this Part unless the written proof that such loss of occupational use of either or both hands is permanent is submitted to the Company within 90 days after the termination of the 12 month period for which monthly indemnities were paid or are payable under Part I or Part II. Indemnity will not be paid under this Part for any loss occurring on or after the insured's sixty-fifth birthday.

Indemnity otherwise payable under this Part for loss caused by or resulting from Pre-existing Condition, as defined herein, will be reduced to amount of $15,-000.00 (emphasis added).

Continental paid Toorigian the amount provided in part II for twelve months. Toorigian then submitted a claim for benefits under part III of the policy. Generally, Toorigian claimed that she could not function as a court reporter because at times her hands would become claw-like which rendered her unable to operate her stenograph machine. Continental determined that no pathological changes existed in either of Toorigian's hands and denied her part III benefits on that basis.

Toorigian next filed the instant lawsuit for breach of contract alleging that she has suffered "functional impairment" of her hands and, thus, is entitled to part III benefits. Continental has filed a motion for summary judgment in which it asserts that there is no evidence of pathological changes to either or both of Toorigian's hands and, therefore, she is not entitled to the Loss of Use of Hand Indemnity. In support of the motion for summary judgment, Continental offers the depositions of two doctors that examined Toorigian and the pleadings of both parties. Thus, the major issue before the bench is whether Toorigian has experienced a pathological change in either or both of her hands. The Court finds she has not.

Summary judgment should not be entered by a district court unless the pleadings, stipulations, affidavits and admissions in the case show that there exists no genuine issue as to any material fact. It is an extreme remedy that is not appropriate unless the moving party has established its right to a judgment with such clarity as to leave no room for controversy and unless the other party is not entitled to recover under any discernible circumstances. The court is required to view the facts in the light most favorable to the party opposing the motion. *Vette Co. v. Aetna Casualty & Surety Co.,* 612 F.2d 1076, 1077 (8th Cir. 1980). *See Addickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970).

Toorigian first sought psychiatric help in 1970 from Dr. Harold D. Wolff.[1] His deposition testimony is part of the record before the Court. In November, 1976, Toorigian terminated her employment with the St. Louis County Circuit Court. It was during her last year of employment with the circuit court that she complained of the claw-like condition of her hands. Generally, Toorigian was unable to continue her job as a court reporter because she frequently experienced weakness or fatigue that got progressively worse. She was referred to Dr. Richard S. Sohn, a neurologist. His deposition is also a part of the record. The Court bases its ruling on the findings of Dr. Wolff and Dr. Sohn. No other evidence of Toorigian's condition has been presented to the bench.

According to the terms of part III of the insurance policy issued by Continental, Toorigian is entitled to some payment if either or both of her hands have undergone a pathological change. The insurance policy does not define the term "pathological change." Dr. Wolff defined the term as "damage, anatomical damage to tissue and/or biochemical abnormalities of bodily functions, underlying bodily functions." Dr. Sohn offered no concrete definition but

---

1. Dr. Wolff described Toorigian as anorectic and an insomniac. This diagnosis was made   prior to Toorigian's complaints herein.

related that his examination of Toorigian focused on organic causes for the impairment of function in her hands. Dr. Sohn found no organic cause for Toorigian's condition; however, he stated that there could be pathological impairment of function without there being an organic cause.

Thus, both doctors concluded that pathological impairment of function could result from psychiatric conditions underlying a noticeable physical change. Nevertheless, both doctors concluded such was not the case with Toorigian. The two doctors determined that Toorigian, in their opinion, did not suffer from a pathological impairment of function in her hands. Dr. Wolff, who has treated Toorigian since 1970, opined that the only impediment to her returning to her duties as a court reporter is her inability to cope with the stressful conditions of her job. Dr. Wolff stated that otherwise Toorigian could well handle the physical requirements of a court reporter. Dr. Sohn is in accord. Dr. Wolff concluded by testifying that although it was possible that there could be some biochemical aberration that would affect the function of the hand, there was no evidence of such an aberration in Toorigian's case.

The evidence is unrefuted that neither of plaintiff's doctors found a pathological change in the court reporter's hand, nor did they find that psychiatric conditions were the underlying cause of any physical change.

The burden rests with Toorigian to counter the fact that the insurance contract, as drafted by the defendant, requires that there be a pathological change in the hands to be protected by the terms of the policy. Toorigian has not offered sufficient evidence to substantiate her claims that there *is* a pathological impairment to the hands or that a psychiatric condition is the cause of a noticeable physical change.

It is clear, therefore, that Toorigian must demonstrate a pathological change to her hands to qualify for benefits under the insurance policy. Without that essential element, the plaintiff can have no justiciable claim.

Therefore, plaintiff's motion for summary judgment must be, and is GRANTED.